272 N.J. Super. 108 (1994)
639 A.2d 372
NELLY COSTA, PLAINTIFF,
v.
VIRGINIA PEREZ, GEORGE LYTWYN AND LEASE AND GO, DEFENDANTS, ZULEMA ORTIZ, PLAINTIFF-APPELLANT,
v.
VIRGINIA PEREZ, GEORGE LYTWYN AND LEASE AND GO, DEFENDANTS-RESPONDENTS, VIRGINIA PEREZ, PLAINTIFF,
v.
GEORGE LYTWYN, LEASE AND GO AND JOHN DOE AND ANY OTHER PARTIES WHO MAY BE NECESSARY TO BE BROUGHT INTO THIS PROCEEDING, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1994.
Decided April 5, 1994.
*109 Before Judges PRESSLER, BROCHIN and KLEINER.
Robert A. Solomon argued the cause for appellant (Daniels & Solomon, attorneys; Joel M. Bacher, on the brief).
Camille Joseph Kassar argued the cause for respondent Virginia Perez (De Yoe, Heissenbuttel & Mattia, attorneys; Mr. Kassar, on the brief).
*110 Randi S. Greenberg argued the cause for respondents George Lytwyn and Lease and Go (Robert A. Auerbach, attorney; Ms. Greenberg of counsel and on the brief).
The opinion of the court was delivered by KLEINER, J.S.C., (temporarily assigned)
This is a verbal threshold case in which plaintiff Zulema Ortiz appeals from the grant of summary judgment in favor or defendants.[1] The motion judge determined that plaintiff failed to meet the tort threshold requirements embodied in N.J.S.A. 39:6A-8a and described as a Type 9 injury. Oswin v. Shaw, 129 N.J. 290, 315, 609 A.2d 415 (1992). Using a summary-judgment model which is the correct procedure in all verbal threshold cases, id. at 294, 609 A.2d 415, and based on our analysis of the Type 9 injury, we conclude that defendants' summary judgment motions should have been denied and accordingly, we reverse.
N.J.S.A. 39:6A-8a enumerates nine categories or types of injury which are exceptions to a general prohibition of claims for noneconomic loss attributable to the ownership, operation, maintenance, or use of an automobile in the State. The statute is drafted in terms of objective gradation of injury severity commencing with Type 1, "death" and proceeding in decreasing severity to Type 9 which is applicable to "nonpermanent injury."[2] The specific categories are:
Type 1: death;
Type 2: dismemberment;

*111 Type 3: significant disfigurement;
Type 4: a fracture;
Type 5: loss of a fetus;
Type 6: permanent loss of use of a body organ, member, function or system;
Type 7: permanent consequential limitation of use of a body organ or member;
Type 8: significant limitation of use of a body function or system
Type 9: a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment [hereinafter "90/180-day requirement"].
[Id. at 315, 609 A.2d 415].
Oswin teaches that the New Jersey verbal threshold statute was modeled after the New York statute. However, unlike New York, which requires "serious injury" as a predicate upon which noneconomic loss claims are assertable, the New Jersey statute does not expressly use the term "serious injury." Our statute simply requires that an injury fall within one of the nine specified types. Ibid.
In Puso v. Kenyon, 272 N.J. Super. 280, 290, 639 A.2d 1120 (App.Div. 1994), we indicated that certain categories or types are self-defining, while others require analysis of legislative intent and precedent in other jurisdictions. Illustrative of this analytic method is our Supreme Court's emphasis, Oswin v. Shaw, supra, 129 N.J. at 315-18, 609 A.2d 415, on the decision in Licari v. Elliott, 57 N.Y.2d 230, 455 N.Y.S.2d 570, 441 N.E.2d 1088 (1982), in formulating a definition of a Type 8 injury, namely "significant limitation of use of a body function or system." We employed the same analysis in defining a "significant disfigurement" or Type 3 injury. Puso v. Kenyon, supra, 272 N.J. Super. at 291-92, 639 A.2d 1120.
A Type 9 injury does not include the elusive term "significant" and although the plain language of the description renders a Type 9 injury self-defining, to some extent, we must utilize an analytical approach to determine how a claimant proves a Type 9 injury. A similar approach was utilized in Oswin v. Shaw, supra, as to Type *112 6, 7 and 8 injuries, in determining the proofs required to establish "permanency" and, once the meaning of "significant" was defined, in delineating the proofs required when a "significant limitation of use of a body function or system," a Type 8 injury, is asserted by a claimant.
In our analysis of a Type 9 injury, we conceive that the Supreme Court's discussion, id., 129 N.J. at 315-17, 609 A.2d 415, of Licari v. Elliott, supra, is most helpful.
In Licari the New York Court of Appeals evaluated only two of the injury types: "significant limitation of use of a body function or system" and the 90/180 day requirement. In respect of the first category, the court said:
[T]he word "significant" as used in the statute pertaining to "limitation of use of a body function or system" should be construed to mean something more than a minor limitation of use. We believe that a minor, mild or slight limitation of use should be classified as insignificant within the meaning of the statute.
[Id. 455 N.Y.S.2d at 573, 441 N.E.2d at 1091.]
Although the injuries alleged in Licari were plainly not within the statutory term "serious injury," that case is helpful in broadly defining the types of injuries that do qualify for compensation under the statute. The plaintiff was a taxi driver who, after an automobile accident, was diagnosed as having "a concussion, acute cervical sprain, acute dorsal lumbar sprain and a contusion of the chest." Id. 455 N.Y.S.2d at 571, 441 N.E.2d at 1089. The hospital released him after two hours, and his family physician told him to rest in bed. Two days later he consulted his physician again, complaining of having coughed up reddish phlegm. Tests revealed that plaintiff had sustained no rib damage and that his lungs were clear. The hospital physician testified that the "plaintiff's lungs were clear, reflexes normal, and * * * he suffered only a `very mild limitation' of movement in the back and neck areas." Ibid.

Twenty-four days after the accident, the plaintiff returned to work, adhering to his pre-accident schedule: twelve hours a day, six days a week. The only limitation he complained of concerning his daily activities was that he was unable to help some fares with luggage and that he could not help his wife with household chores. Id. 455 N.Y.S.2d at 571-72, 441 N.E.2d at 1089-90.
The court rejected the plaintiff's claim in respect of the 90/180-day requirement because he had returned to his normal work schedule within twenty-four days and therefore had been able to perform "substantially all of his daily activities" during the statutory period. Id. 455 N.Y.S.2d at 574, 441 N.E.2d at 1092.
The court also found that the plaintiff had not proved that his concussion and bruised chest had wrought a significant limitation of use of a body function or system, or that his occasional headaches and dizziness produced more than temporary discomfort. The court concluded that "[t]he Legislature could not have intended headaches and dizziness of the type experienced by plaintiff to constitute *113 a significant limitation of use of a body function or system." Id. 455 N.Y.S.2d at 575, 441 N.E.2d at 1093.
To succeed under either statutory category, a New York plaintiff must offer objective evidence of injury-related disability. Id. 455 N.Y.S.2d at 574-75, 441 N.E.2d at 1092-93. In rejecting the plaintiff's claim under the 90/180-day requirement the court said, "[S]ubjective complaints of occasional, transitory headaches hardly fulfill the definition of serious injury." Id. "We do not believe the subjective quality of an ordinary headache falls within the objective verbal definition of serious injury as contemplated by the No-Fault Law." Ibid. With regard to the "significant limitation of use of a body function" claim, the court said:
Plaintiff offered no evidence as to the extent of the limitation of movement. * * * No evidence was offered to show that any of these injuries caused a significant limitation of use of a body function or system. * * * No proof was offered to show that these ailments ever went beyond mere temporary discomfort, relieved by aspirin.
[Id. 455 N.Y.S.2d at 575, 441 N.E.2d at 1092-93.]
 [Oswin v. Shaw, supra, 129 N.J. at 315-17, 609
 A.2d 415.]
We therefore conclude that in analyzing a claim of a Type 9 injury, the court must determine that plaintiff has made a prima facie demonstration (a) that the injury, albeit nonpermanent, is based on objective medically-determined medical evidence; (b) that the injury, although nonpermanent, prevented the plaintiff from performing substantially all the material acts which constitute that person's usual customary and daily activities; and (c) that the limitation of activity existed for not less that 90 days during the 180 days following the occurrence of the injury or impairment.[3] Thus, although a Type 9 injury may be nonpermanent in nature, the injury must be sufficiently serious so as to limit substantially plaintiff's customary activities for the requisite 90/180 day time period, and proof of this substantial limitation cannot be predicated solely on the basis of subjective complaints. Id. at 319, 609 A.2d 415. The two standards articulated in Oswin, id. at 318-19, 609 A.2d 415,  one objective and the other partially subjective and partially objective  are therefore applicable in *114 evaluating a Type 9 injury. See Polk v. Daconceicao, 268 N.J. Super. 568, 575, 634 A.2d 135 (App.Div. 1993). Within the parameters of a summary-judgment model, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2; see also Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75, 110 A.2d 24 (1954).
On November 17, 1989, plaintiff Zulema Ortiz was a forty-one year old temporarily unemployed sewing machine operator. She was a passenger in a motor vehicle involved in a two-car collision. Her host driver, defendant Virginia Perez, collided with the vehicle owned by defendant Lease and Go and operated by defendant George Lytwyn. The interrogatory answers and deposition testimony of plaintiff Ortiz clearly establish that until September 1989, she was gainfully employed in two types of employment. During the day she was regularly employed as a sewing machine operator at a coat manufacturing factory. During the evening, she supplemented her income as a janitorial service worker, cleaning offices. In September 1989, plaintiff was laid off from her regular employment, began to collect unemployment compensation, and to avoid any disqualification, she elected to temporarily discontinue her second night time employment.[4] Thus, on November 17, 1989, plaintiff, although temporarily unemployed, was a member of the work force.
Plaintiff first consulted a physician after her accident on December 11, 1989. She certified that she self-treated between November 17, 1989 and December 11, 1989, but when her symptoms persisted, she sought medical advice. She complained of severe headaches, severe neck pain with radiation to the left upper *115 extremities with occasional paresthesia to the left upper extremity and pains in the chest. She attributed the latter complaint to the fact that she struck her chest against the dashboard of the vehicle in the collision. Her treating physician referred her for diagnostic evaluations including a tomographic evaluation and notably an electromyograph and nerve conduction study. These tests revealed electrodiagnostic signs of radiculitis diffuse at the C5-C6 on the left side. Her treating doctor opined that these objective findings correlated to plaintiff's subjective complaints of shoulder pain on the left side and complaints of tenderness of the paraspinal muscles and trapezius muscles on the left side.[5]
Plaintiff's deposition testimony included her contention that Dr. Colon recommended bed rest, the use of a sling, daily physical therapy and a regimen of prescribed analgesic medication. She indicated that she participated in physical therapy on a daily basis until March 26, 1990 and used a sling for approximately three months.
A medical report of plaintiff's treating physician fails to mention any medical advice respecting "bed rest" or advice respecting the use of a sling. However, the report does state, "The patient was partially disabled during the period of treatment in my office from December 11th, 1989 until March 26th, 1990."
Plaintiff contends that her period of disability was a minimum of 105 days calculated from December 11, 1989 to March 26, 1990, or 128 days if calculated from the date of the collision.
We perceive that the appropriate question which the trial court should have considered was whether the medical opinion of Dr. Colon of temporary disability for 105 days coupled with plaintiff's certification at depositions that she engaged in physical therapy on a daily basis and used a sling for approximately three months *116 were sufficient facts to defeat the defendants' motions for summary judgment. The rational inference which may be drawn from those facts which were unrebutted by any fact proffered by defendants is that plaintiff was prohibited from engaging in substantially all of her usual customary daily activities during her period of temporary disability. A fair inference is a sewing machine operator will be prevented from accepting employment in that capacity while utilizing a sling and while participating each day in physical therapy. The absence of a medical report definitely stating that the plaintiff could not work during the specific 105 day period should not have resulted in a dismissal of her claim on a motion for summary judgment. The plaintiff, as the party opposing the motion for summary judgment, must be accorded all favorable inferences. Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J. at 75, 110 A.2d 24.
The trial court on this motion failed to properly analyze plaintiff's claim as a Type 9 injury. In his letter opinion, the judge stated:
Plaintiff's chief complaints are pain in left shoulder and chest on left side. Plaintiff alleges confinement to bed for five months, however, it is unclear if this was at the specific direction of a physician.
Dr. Colon's report of 9/28/90 found left shoulder tenderness and decreased rotation; anterior chest wall tenderness and decrease in inspiration. His diagnosis is left shoulder contusion and left side of chest contusion, which are conclusory in nature and unsupported by diagnostic test results.
X-rays of the shoulder were negative (no rib fractures). Thermogram and electromyographic studies revealed radiculitis at C5-C6.
Dr. Colon opines that plaintiff has permanent consequential limitation of use of left shoulder; poor prognosis because such injuries are "usually" precursor to other problems; and patient was partially disabled during treatment. All prognosis (diagnosis [sic] appear conclusory and unsupported by objective, credible evidence.
Plaintiff's certification and opposition asserts a Type A [sic] injury citing plaintiff's confinement to bed and home for 129 days after the accident combined with Drs Colon and Fishberg's findings of C5-C6 radiculitis and spasm.
The court finds plaintiff's submissions insufficient to satisfy the threshold requirements. Plaintiff's reliance on the EDS findings[6] at C5-C6 is unclear given *117 plaintiff's subjective pains to her left shoulder and chest wall. No doctor draws a clear causal link between plaintiff's complaints, the injured area and the cervical findings at C5-C6.
In the absence of clear objective/credible evidence, plaintiff's assertions of permanent (serious) injury must fail.
[Emphasis added.]
The court misread the medical evaluation of the treating physician. In describing the plaintiff's diagnosis, Dr. Colon stated:
The patient was placed on a program of physical therapy which included Hydrocollator therapy, interferential current therapy and ultrasound therapy to the affected areas. The patient was also given a prescription for a nonsteroidal anti-inflammatory medication to take for relief of the pain. The patient was seen in follow-up visits in my office with the above complaints. She presented for a full course of physiotherapy and continued to take the nonsteroidal anti-inflammatory medication. She had x-rays of the left shoulder which did not show any evidence of fracture. The examination of the chest did not show any evidence of rib fractures. The patient was evaluated with thermography studies, electromyographic studies and nerve conduction studies which showed electrodiagnostic signs of radiculitis diffuse at the level of C5-C6 on the left side. The radiculitis is a term used to describe an injury to a nerve root at the level of the spinal canal. The symptoms of the shoulder pain of this patient on the left side and the tenderness on paraspinal muscles and the trapezius muscles on the left side correlate very well with the findings on the electromyography. The weakness in the upper extremities is associated with pain and had distribution that correlates with this radiculitis.
The balance of Dr. Colon's report offered his opinion respecting plaintiff's condition on discharge and the permanency of plaintiff's condition. As to the medical opinion on permanency, the court concluded that, "[I]n the absence of clear objective/credible evidence, plaintiff's assertions of permanent (serious) injury must fail." That conclusion would have been presumably correct if the court were evaluating a Type 6, 7 or 8 injury. However, on this motion, the court should have focused upon the specific criteria of a Type 9 injury and not upon the viability or insufficiency of proof as to the permanency of which is not an element of a Type 9 injury.
The medical report of Dr. Colon and the diagnostic test results of the electromyographic studies, taken together with plaintiff's certification, answers to interrogatories and deposition testimony, were, as a whole, sufficient to withstand defendants' summary judgment motions. R. 4:46-2.
*118 The order granting summary judgment to defendants is reversed.
NOTES
[1] Plaintiff's complaint for noneconomic damages attributable to her alleged injuries sustained in this collision was consolidated with an earlier filed complaint of another passenger Nelly Costa. Summary judgments dismissing both complaints were entered on January 8, 1993. A subsequently filed complaint of plaintiff Virginia Perez was also consolidated with Costa v. Perez, et al, but was not considered by the court on January 8, 1993.
[2] We recognize that a purely subjective analysis might result in a different sequence of prioritization.
[3] We note that in New York when a Type 9 injury claim is evaluated by a jury, each prong of the statutory requirement is submitted to the jury in a separate interrogatory. See Shiner v. Insetta, 137 Misc.2d 1012, 525 N.Y.S.2d 982, 983 (App. Term 1987).
[4] After plaintiff's medical treatment ceased, she accepted a new position as a sewing machine operator and a second night time job as a mail distribution clerk.
[5] We are not concerned with the issue as to whether these findings in January 1990 are sufficient to support any claim of plaintiff to a Type 6, 7 or 8 injury. We are only concerned with the Type 9 injury asserted by plaintiff in response to defendants' summary judgment applications.
[6] The motion judge's reference is to the findings of the Center for Electrodiagnostic, P.A., dated January 23, 1990.