653 A.2d 1200

ELETHA DUFFY, PLAINTIFF–APPELLANT, v. ANITA
O'CONNELL AND DONALD VANARELLI,
DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 12, 1994—Decided February 28, 1995.

Before Judges BRODY, ARNOLD M. STEIN and PAUL G. LEVY.

*Timothy P. McKeown* argued the cause for appellant (*Schachter, Trombadore, Offen, Stanton & Pavics,* attorneys; *Mr. McKeown,* on the brief).

*Daniel Kaplinsky* argued the cause for respondent Anita O'Connell (*Martin & Simmonds,* attorneys; *Christina F. Blunda,* on the brief).

*Luke A. Petrocelli* argued the cause for respondent Donald Vanarelli (*Offices of Edward P. Papalia, Jr.,* attorneys; *Cindy L. Thompson,* of counsel and on the brief).

The opinion of the court was delivered by

PAUL G. LEVY, J.A.D.

Plaintiff sought non-economic damages for personal injuries arising out of an automobile accident. After discovery was complete, defendants moved for summary judgment, arguing that plaintiff failed to meet the "verbal threshold" of *N.J.S.A.* 39:6A–8a. The motion was granted. On appeal plaintiff contends the motion judge failed to consider her qualification under the ninth

category of the verbal threshold concerning a disability for at least 90 out of the 180 days immediately following the accident. We affirm the grant of summary judgment resulting in the order of November 29, 1993, dismissing the complaint.

Plaintiff was injured in an automobile accident on July 20, 1990. She was treated by an orthopaedist, Martin L. Sorger, M.D., who observed "bilateral paracervical spasm" and his diagnosis was "traumatic cervical strain." When he last saw plaintiff on September 6, 1990, his opinion was that she suffered a strain which was not permanent, but she "would have intermittent pain in both the cervical and lumbar spines." He noted that "with rest, heat, analgesics and exercises, her symptoms have improved." One week later plaintiff was seen by another orthopaedist, Paul J. Hirsch, M.D. He directed plaintiff to have an MRI test, and although the radiologist opined the MRI was normal, Dr. Hirsch saw "evidence of disc bulging." He advised plaintiff to stay out of work for the remainder of the week, returning the next Monday but limiting her hours to no more than half-days and resuming her physical therapy at that time. In June 1991, he advised her she could resume a cautious swimming program. His diagnoses were cervical sprain syndrome, thoracic sprain syndrome, lumbosacral sprain syndrome and tronchanteric bursitis (caused by the treatment of her lower back). Based on symptoms existing one year after the accident, Dr. Hirsch opined "it is medically probable that Ms. Duffy has sustained a permanent impairment of her lower back, reasonably related to the described motor vehicle accident." Subsequently, between December 1991 and May 1992, plaintiff was treated at the Family Chiropractic Center by Drs. Svihovec and Ershow. They concluded plaintiff's condition was not permanent but it was "quite feasible [there could be] re-exacerbation on an ongoing basis." They reviewed the MRI of October 1990 and observed "evidence of a moderate posterior disc bulge at the fourth and fifth lumbar disc levels." Their diagnoses were "cervical-thoracic sprain-strain type injury" and "compensatory strain to the lumbosacral spine."

*N.J.S.A.* 39:6A–8(a) excludes liability for non-economic loss from bodily injuries related to an automobile accident "unless [the injured] person has sustained a personal injury which results in ... [9] a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment...." New York has the identical definition. *N.Y. Ins. Law* § 5102(d) (McKinney 1994).

The seminal case concerning verbal threshold issues is *Oswin v. Shaw,* 129 *N.J.* 290, 609 *A.*2d 415 (1992). In *Oswin* the Supreme Court directed trial courts to follow the summary judgment model and decide whether the alleged injury, if proven, meets the requirements of one of the verbal threshold categories. *Id.* at 294, 609 *A.*2d 415. Noting that our no-fault statute was based on New York's, *Oswin* directs use of that state's standards to evaluate a plaintiff's injuries, citing specifically the decision of the New York Court of Appeals in *Licari v. Elliott,* 57 *N.Y.*2d 230, 455 *N.Y.S.*2d 570, 441 *N.E.*2d 1088 (1982). *Id.* 129 *N.J.* at 315, 609 *A.*2d 415.

The Court adopted the New York rule that a "plaintiff must show a material dispute of fact by credible, objective medical evidence," and "a nexus between the injury and disability," meaning proof that "the injury had a serious impact on the plaintiff and her life." *Id.* at 314, 318, 609 *A.*2d 415. The Court emphasized that it required objective proof of soft-tissue injuries and consequent disability. *Id.* at 319–20, 609 *A.*2d 415. A doctor's mere parroting or paraphrasing of the threshold statute is insufficient to meet the test. *Id.* at 320, 609 *A.*2d 415.

■ At first, the motion judge decided the objective evidence was insufficient to meet the verbal threshold. Subsequently he determined "that plaintiff has met the objective criteria and that the disc bulge and some limitation of motion constitute a 'serious injury'." The spasm noted by Dr. Sorger, the disc bulging seen by Dr. Hirsch and the disc bulge observed by Drs. Svihovec and

Ershow constitute objective proof of the injury they diagnosed: a strain of plaintiff's lower back. Having found credible objective medical evidence of a serious injury, the motion judge must then determine whether there is "objective evidence demonstrating a 'fit' within the statutory definition." *Oswin v. Shaw, supra,* 129 *N.J.* at 318, 609 *A.*2d 415.

In this case where plaintiff seeks qualification only for a type 9 injury, the judge must examine the proofs of plaintiff's experiences and of her inability to perform "substantially all of the material acts" constituting her usual and customary daily activities during 90 of the 180 days following the accident. It is obvious that such proof would catalog the plaintiff's usual and customary daily activities, listing the amount of time spent working, performing household work, engaging in recreational and social activities and whatever might constitute a particular plaintiff's lifestyle. If, after appropriate discovery, it appears those particular activities are not disputed, the trial judge must determine whether the plaintiff's inability to perform some of those activities fits the statutory standard.

*Costa v. Perez,* 272 *N.J.Super.* 108, 639 *A.*2d 372 (App.Div. 1994), provides an example of the proofs to be marshalled and considered by the motion judge. A plaintiff must show *prima facie* proof that the injury was "based on objective medically-determined medical evidence," that it "prevented the plaintiff from performing substantially all the material acts which constitute that person's usual customary and daily activities," and that the restrictions on activity had to last for at least 90 of the first 180 days. *Id.* at 113, 639 *A.*2d 372. In *Costa,* plaintiff's doctor certified she had been temporarily disabled for 105 days. We held that a jury could infer the plaintiff suffered a type 9 injury because the doctor found her disabled for the requisite number of days, she would not be able to accept employment with her arm in a sling for three months and she was attending physical therapy every day. *Id.* at 115–16, 639 *A.*2d 372.

In *Licari*, the Court of Appeals of New York considered type 9 claims and said:

the words "substantially all" should be construed to mean that the person has been curtailed from performing his usual activities *to a great extent rather than some slight curtailment.* As to the statutory 90/180–day period of disability requirement, it should be considered a necessary condition to the application of the statute. (Emphasis supplied)

[*Licari, supra,* 455 *N.Y.S.*2d at 573, 441 *N.E.*2d at 1091.]

The *Licari* court held that plaintiff, who missed 24 days of work before resuming his usual schedule as a taxi driver, was unable to help passengers with their luggage, and unable to help his wife with household chores as much as he had before the accident, did not suffer a type 9 injury. *Id.* at 574, 441 *N.E.*2d at 1091–92.

Subsequent case law in New York demonstrates an emphasis on the "great extent" versus "some slight curtailment," with most concentration on the ability to continue one's employment. Thus in *DeFilippo v. White*, 101 *A.D.*2d 801, 475 *N.Y.S.*2d 141, 143 (App.Div.1984), plaintiff's affidavit indicated he was out of work for 65 days following his accident and then only worked part time, three to four hours daily, for another 28 days, before returning to full time employment. The Appellate Division held, as a matter of law, this did not meet the standard of *Licari* requiring curtailment of usual activities to a great extent.

*Gaddy v. Eyler*, 79 *N.Y.*2d 955, 957–58, 582 *N.Y.S.*2d 1176, 591 *N.E.*2d 990 (1992), concerned a plaintiff whose physicians found had sustained "a chronic cervical and lumbosacral sprain and strain as a result of the accident." Plaintiff missed two days from work and claimed her household and recreational activities were curtailed as a result of the accident. The Court of Appeals held this was only a slight curtailment under *Licari*.

In *Melino v. Lauster*, 195 *A.D.*2d 653, 599 *N.Y.S.*2d 713, 714–15 (App.Div.), *aff'd*, 82 *N.Y.*2d 828, 605 *N.Y.S.*2d 4, 625 *N.E.*2d 589 (1993), plaintiff was injured just after graduating from high school and she was prevented from performing her summer job as a secretary. In the fall she attended college full-time. Plaintiff's affidavit said she was unable to ski, skate or do aerobics, but there

was no medical evidence confirming her inability to do so. Although her physician referred to a limited range of motion of her neck and back, he failed to "translate this constraint to plaintiff's daily activities." Finding plaintiff's primary activity during the 180 day period was attending college, the court concluded plaintiff failed to meet the verbal threshold.

*Thomas v. Drake,* 145 *A.D.*2d 687, 535 *N.Y.S.*2d 229, 230–31 (App.Div.1988), involved a schoolboy struck in the leg by a tractor-trailer. His physician had advised him to remain at home, leading to a 77 day absence from school. The court looked to the consequences attendant on plaintiff's return to school, and since the discovery revealed the boy could not participate in gym class, walked with a substantial limp and was unable to ride his bike as he usually did, coupled with the medical opinion that the boy was "disabled" until discharged the next summer, led the court to conclude that plaintiff had raised a "triable issue of fact" as to whether he met the verbal threshold.

Most recently, in *Balshan v. Bouck,* 206 *A.D.*2d 487, 488, 614 *N.Y.S.*2d 747 (App.Div.1994), plaintiff returned to work within four days and performed her normal duties, but alleged she was unable to swim, jog or bowl as she had usually done prior to the accident. There was no medical evidence confirming plaintiff's inability to swim, jog or bowl. The court reversed the jury's $20,000 verdict for plaintiff, holding that plaintiff's injury did not "substantially" curtail her normal daily activities.

In *Costa v. Perez, supra,* the plaintiff was a temporarily unemployed sewing machine operator who suffered injuries in an auto accident. Although unemployed, that plaintiff was still considered a member of the workforce because she was collecting unemployment insurance. Like the New York cases, *Costa* focused upon employment or employment availability as the primary daily activity which must be greatly impaired for 90 out of 180 days. That plaintiff was completely unavailable for work for more than 90 days, and was thus impaired to a "great extent" in her daily activities for at least 90 days. Unlike *Costa,* the plaintiff here, by

her own admission returned to work part time and did not miss 90 days from her work. But we know more about plaintiff than her employment activities, so we must examine all the activities she described as usual and customary.

■ Within the 180 day period immediately following the accident plaintiff, an attorney, claimed to have missed 36 full days of work (Dr. Hirsch had only directed her to miss half of the work day for most of those 36 days) and took a two week vacation "because of the pain, because of being unable to work and because of already having missed so much time at work." While at work during the remainder of the 180 days, she "was unable to perform her usual activities" and had to take continuous breaks and long rests. Although she lost no compensation or employment status, her billable hours were reduced to the extent that she averaged 147 hours per month from January through July but only 70 hours per month from August through December. Further, some billable hours were created while at home in bed and others while lying on the office floor in a more comfortable position than sitting at a desk.

She said in her affidavit that she was unable to maintain the household "in the usual manner" and had "a great deal of difficulty" washing dishes, vacuuming, cleaning and the like. In addition plaintiff "could no longer play tennis or continue [her] weight training program" nor swim laps three to four times a week as she did before the accident, stating she was "unable to perform these activities for at least 90 days within the first 180 days following the injury." We accept plaintiff's certification that she customarily engaged in washing dishes, vacuuming, cleaning and the like, as well as tennis, weight training and swimming, in addition to her employment. We cannot accept her conclusory statement that she was "unable to perform these activities for at least 90 days within the first 180 days following the injury." Except for Dr. Hirsch's directions to refrain from fulltime work for perhaps some 36 days, assuming those directions were based on his observation of some disc bulging, there is no objective evidence that her injuries

prevented her from engaging in her usual and customary daily activities for any particular number of days. Moreover, even if she was completely unable to engage in her usual social and recreational activities and was unable to maintain her household "in the usual manner [except] with a great deal of difficulty," we must also consider her return to work, albeit part time and producing less output for her employer. Considering all her activities during the 90 day period, the balance falls closer to a "slight curtailment" than a "great extent." We do not find the evidence of the nature and extent of her inability to perform her usual daily activities is close enough to being substantial to allow a jury to determine that it was. That is, we conclude her major activity was her work, given that she was able to bill almost seven hours per day before the accident, and her return on a part time basis after no more than fifty days indicates she was not disabled to a great extent. We are confident that the same result would be reached in New York.

It is clear plaintiff could not meet the verbal threshold in New York because she missed no more than 50 days from work of which 30 were probably part-time. *Thomas v. Drake, supra,* required medical direction to cease work and a medical analysis of the consequences attendant on her return to work and its usual and customary activities, but here no doctor found objective evidence of her inability to practice law for the requisite period. *See also Georgia v. Ramautar,* 180 *A.D.*2d 713, 579 *N.Y.S.*2d 743 (App.Div.1992) (plaintiff was able to perform his job within 50 days of the accident); *Grotzer v. Levy,* 133 *A.D.*2d 67, 518 *N.Y.S.*2d 629 (App.Div.), *app. denied,* 70 *N.Y.*2d 611, 523 *N.Y.S.*2d 495, 518 *N.E.*2d 6 (1987) (returning to work within one month fails to meet the verbal threshold). Indeed plaintiff was able to continue practicing law, billing almost half the hours she customarily billed and receiving all the pay and emoluments of employment she always enjoyed. *See DeFilippo v. White, supra,* (part-time work does not qualify as time for the 90 day minimum). Plaintiff still did her household chores but not "in the usual manner" and with "difficulty." This type of evidence fails to specify exactly what

she was unable to do and lacks either medical direction or medical observation to be sufficiently objective. Although plaintiff said she could no longer play tennis, lift weights or swim laps, Dr. Hirsch's report indicates she pursued a course of physical therapy and used a cross-country ski trainer at home. Similar circumstances in *Melino v. Lauster, supra,* and *Balshan v. Bouck, supra,* failed to cross the verbal threshold.

After carefully reviewing the record, we conclude plaintiff's major daily activity was her work as an attorney, and though she may have experienced some restriction on her other usual activities, the record does not support a conclusion that they were diminished "to a great extent rather than some slight curtailment." *Licari v. Elliott, supra,* 455 *N.Y.S.*2d at 573, 441 *N.E.*2d at 1091.

█ Finally, we reject plaintiff's alternative contention that she qualifies under the definition of a type 6 injury as having "permanent loss of use of a body organ, member, function or system." There is no objective evidence of this in the record.

Affirmed.