685 A.2d 1357

JOANN JEFFERSON AND ELELAKE JEFFERSON, PLAINTIFFS–APPELLANTS, v. JOHNNY M. FREEMAN AND DOMINICK SALERNO, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted November 27, 1996—Decided December 20, 1996.

Before Judges BAIME, Paul G. LEVY and BRAITHWAITE.

*Robert S. Miller,* attorney for appellants (*Alfred V. Gellene,* on the brief).

*Robert A. Auerbach,* attorney for respondents (*Randi S. Greenberg,* of counsel and on the brief).

The opinion of the court was delivered by

PAUL G. LEVY, J.A.D.

A jury found that plaintiff, a cashier employed at a supermarket, did not qualify for an award of non-economic damages under the ninth category of qualifying injuries under the "verbal threshold" statute (*N.J.S.A.* 39:6A–8a), yet it awarded her an economic loss for lost wages. Plaintiff's appeal focuses on the issue of whether her injuries had a "serious impact on the plaintiff and her life," a factual determination to be made by the jury. We hold that the jury instructions regarding this issue were misleading and clearly capable of producing an unjust result. Accordingly, we reverse and remand for a new trial limited to consideration of non-economic damages for injuries qualifying under type nine of the verbal threshold.

Plaintiffs, wife and husband, filed a complaint alleging the wife's personal injuries, as a result of an automobile accident caused by the negligence of defendants, and the husband's loss of consortium. On a snowy day, plaintiff's car stalled and was struck in the rear so hard that emergency crews had to use the "jaws of life" apparatus to extract her from the car. Taken to a local hospital, she complained of pain "from head to toe." X-rays were taken of her skull, neck and back, and although she could not walk, she was released several hours later and advised to consult with her own physician.

Plaintiff consulted and was treated by several doctors. First, Dr. Davis, a chiropractor, recommended that plaintiff see a gynecologist for a pregnancy test. Plaintiff was found to be pregnant and subsequently delivered a healthy child in October 1993. Because of her pregnancy, no additional x-rays were taken until after October 1993. Plaintiff testified that her wrists and ankles bothered her during her pregnancy.

During her pregnancy, Dr. Haidri, a neurologist, prescribed braces for her wrists upon discovering carpal tunnel syndrome through an EMG. With regard to her wrists, plaintiff testified that she suffers throbbing and aching pain in her wrists, which sometimes feels like pins and needles, and other times is numbing and aching. She sometimes feels pain in her whole hand, sometimes in her fingers, and the pain radiates up her arm and into her shoulder. Plaintiff testified she never injured her wrists or arms before the accident.

At trial, Dr. Haidri testified that he made an initial diagnosis of concussion, post traumatic headaches and dizziness, acute sprain of her neck, mid and low back pain and radiculopathy and pinched nerves in her neck and back sprain. He noted that the neurological testing of plaintiff's brain, the EMG of her legs, and the MRI of her left ankle were normal. Her hip x-rays were negative. Dr. Haidri indicated that plaintiff had bilateral carpal tunnel syndrome, which he attributed to her gripping her hands to the steering wheel during the accident, but acknowledged this problem could also be caused by pregnancy, being overweight, thyroid problems, and/or repetitive motion. The EMG of the cervical spine was normal except for the suggestion of carpal tunnel syndrome. The doctor testified he gave plaintiff a guarded prognosis based on the duration of her symptoms. He testified her symptoms were consistent and reliable throughout the time that he saw her.

Dr. Davis, the chiropractor, treated plaintiff's neck and back three times each week from February 1993 to December 1993. Plaintiff testified that the chiropractic treatments did not help her at all. When her injuries persisted, she saw Dr. Gallick twice for pain in her wrists; Dr. Gallick applied a needle therapy and diagnosed carpal tunnel syndrome.

In May 1994, plaintiff was treated by Dr. Glushakow, an orthopedic surgeon, for pain in her left foot and her swollen right hip, both of which she claims made it difficult to walk. Plaintiff wore an air cast for her left leg from May 1994 to September 1994, a

soft cast from September 1994 to November 1994, and the air cast again from November 1994 to December 1995. In May 1994, Dr. Glushakow also prescribed crutches to plaintiff because of her difficulty in walking without a limp. Dr. Glushakow was the only physician who treated plaintiff's ankle problems.

At trial, Dr. Glushakow testified that he diagnosed plaintiff with lumbosacral radiculitis, cervical sprain, internal derangement of her left ankle, and bilateral Dequervian syndrome. He explained how he gave plaintiff Finklestein's test for which she tested positive; the test measures pain to one's hands. Dr. Glushakow acknowledged that repetitive motion is a cause of carpal tunnel syndrome. The doctor found her wrist and ankle injuries to be permanent in nature and attributable to the accident.

Plaintiff was also treated briefly by Drs. Wolkstein and Megingea. In September 1995, Dr. Megingea began to administer acupuncture to plaintiff's neck, left ankle, hands, and right hip. Plaintiff testified the acupuncture helps to temporarily ease the pain by about ten percent.

Plaintiff was examined by several of defendants' doctors. Dr. Ross, a neurosurgeon, testified that because plaintiff exhibited only one of the two positive signs needed to establish the existence of carpal tunnel syndrome, its existence was suggestive, not conclusive, but that repetitive motions such as those of a cashier could cause carpal tunnel syndrome. The doctor did not think that bracing oneself against the steering wheel for a brief moment before the collision would produce carpal tunnel syndrome. He testified that plaintiff did not exhibit any indications of torn ligaments in her ankle, her MRI was negative, and she had no neurological injury. Dr. Ball, an orthopedist, believed that the accident caused plaintiff to sustain whiplash, but he did not find any indications that she could not work.

Plaintiff testified that she is in constant pain, twenty four hours a day, which has affected her ability to do housework, enjoy the physical benefits of married life and take care of her baby. She

said her vision is frequently blurred and she often gets migraine headaches.

Plaintiff's husband, Elelake Jefferson testified about his wife's claims of pain and its effect upon their marriage. He explained that since the accident he has had to do most of the household chores including cooking and cleaning, and that he has had to cut back his own work hours to take care of the family.

At the time of the accident, plaintiff worked as a cashier at a supermarket where she had been working for over twenty years. As a cashier, plaintiff stands at the register and scans items. She claimed her injuries caused her to lose nineteen months of work at her weekly salary of $425 per week, totaling approximately $42,-000 and received $7000 in disability payments. Plaintiff did not work from February 1993 until January 1994; she returned to work in January 1994 until September 1994 and again in April 1995 due to financial necessity.

### Crossing the Verbal Threshold: Type Nine Injury

The judge instructed the jury on the relevant law, including the verbal threshold statute. Plaintiffs contend the instructions concerning the type nine verbal threshold claim were erroneous because they placed an undue burden of proof on plaintiffs and because they were misleading and confusing. These contentions were not raised at trial and there was no objection to the charge, so we limit our consideration to whether or not there was plain error. *R.* 2:10–2.

The statute provides that a plaintiff in an automobile accident may not recover for non-economic loss unless her injuries satisfy at least one of nine criteria. In this case, pursuant to the statute, plaintiff claims that she suffered injuries that qualified in three of these categories, types seven, eight, and nine:

TYPE 7: permanent consequential limitation of use of a body organ or member;

TYPE 8: significant limitation of use of a body function or system;

TYPE 9: a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material

acts which constitute that person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment. . . .

[*N.J.S.A.* 39:6A–8a quoted in *Oswin v. Shaw,* 129 *N.J.* 290, 315, 609 *A.*2d 415 (1992).]

The seminal case providing a general explanation of the application of the verbal threshold is *Oswin v. Shaw.* There, the Court held plaintiff's injuries did not satisfy any one of the statute's nine categories, and thus, she did not meet the verbal threshold. *Id.* at 294, 609 *A.*2d 415. The Court noted the New Jersey statute was based on a similar law in New York; however, "although the categories in the New York statute serve to define 'serious injury,' the New Jersey statute contains *no specific requirement of 'serious injury,'* resorting instead to only the injury-type categories to designate the types of injury that meet the threshold." *Id.* at 303, 609 *A.*2d 415 (emphasis added). The Court also determined that for a plaintiff to recover, she must present "credible, objective medical evidence" of one or more of the types of injuries described in the statute. *Id.* at 314, 609 *A.*2d 415. Additionally, the Court imposed a second requirement that "a plaintiff must show that 'the injury had a *serious impact* on the plaintiff and her life.' " *Id.* at 318, 609 *A.*2d 415 (internal citation omitted) (emphasis added).

In *McClelland v. Tucker,* 273 *N.J.Super.* 410, 413, 642 *A.*2d 409 (App.Div.1994), we considered the application of the verbal threshold to a jury trial. We held that a plaintiff must present objective medical evidence of injuries allegedly sustained, and "there must be some evidence that plaintiff's injuries had a *serious impact* on her life." *Id.* at 415, 642 *A.*2d 409 (emphasis added). The latter had been described by the Supreme Court as "somewhat subjective" proof of the " 'serious impact on plaintiff's life'." *Oswin v. Shaw, supra,* 129 *N.J.* at 318–19, 609 *A.*2d 415.

In *Dabal v. Sodora,* 260 *N.J.Super.* 397, 616 *A.*2d 1297 (App.Div. 1992), Judge Pressler thoroughly analyzed the subjective criteria needed to prove the serious impact on a plaintiff's lifestyle in order to cross the verbal threshold. Specifically, it was stated:

> We are also satisfied that plaintiff has raised, at least based on this record, an arguable question respecting the more subjective criterion of "serious impact." In our view, a plaintiff's loss of the physical ability to continue to engage in a social or recreational activity which had been a significant and important component of that plaintiff's way of life constitutes a qualifying "serious impact." *See Brown v. Puente,* 257 *N.J.Super.* 203, 608 *A.*2d 377 (App.Div.1992), also decided after the motion proceedings here and referred to with approval by the Supreme Court in *Oswin,* in which we held that the "serious impact" test was met by a student's resultant inability to continue to engage in scholastic athletics at which he had excelled.
>
> Plaintiff here, a 59 year old woman, has asserted that as a result of her injuries, as well as suffering various other limitations on her customary daily activities, she has also had to give up a primary social activity in which she had frequently engaged prior to the accident. We do not view that assertion as expressing a trivial concern to her if, indeed, dancing had been important to her and if, indeed, her injuries had deprived her of the ability to pursue that activity. Obviously what constitutes a deprivation having only a minimal and inconsequential life-affecting impact on one person may have a serious impact on another person.
>
> [*Id.* at 401–02, 616 *A.*2d 1297.]

While considering claims for permanent injuries under types four, six, seven or eight, we have consistently evaluated various proofs of the "serious impact" on a plaintiff's life and have consistently held that subjective evidence of such impact, combined with objective medical evidence of causation, would suffice. Typically that evidence is presented by certification accompanying the opposition to a defendant's pretrial motion for summary judgment. *See, e.g., Sherry v. Buonansonti,* 287 *N.J.Super.* 518, 671 *A.*2d 606 (App.Div.1996); *Cavanaugh v. Morris,* 273 *N.J.Super.* 38, 41, 640 *A.*2d 1192 (App.Div.1994); *Moreno v. Greenfield,* 272 *N.J.Super.* 456, 464–65, 640 *A.*2d 335 (App.Div.1994); *Foti v. Johnson,* 269 *N.J.Super.* 198, 635 *A.*2d 104 (App.Div.1993); *Polk v. Daconceicao,* 268 *N.J.Super.* 568, 576, 634 *A.*2d 135 (App.Div. 1993).

The first eight categories of injuries qualifying for recovery of non-economic losses pursuant to the verbal threshold, ranging from death to serious limitation of use of a body function, each concern a degree of permanency. At trial, a plaintiff must prove a qualifying injury by objective, credible medical evidence as well as a serious impact on her lifestyle. Because permanency is involved, it is expected that the serious impact on the plaintiff's

lifestyle will also have permanency. The ninth category is different, however, because the effects of the injuries are concentrated on events occurring in the six months immediately following the incident.

If the plaintiff seeks to prove an injury meeting the verbal threshold under the ninth category, the statute is plainly all-encompassing and it states all the necessary elements of proof. A type nine verbal threshold injury is either "a medically determined injury" or "an impairment of a non-permanent nature," and at trial, the measure of the seriousness of the injury as well as its impact on a plaintiff's lifestyle are based on the jury's evaluation of "*all* of the *material acts* which constitute that person's *usual and customary daily activities.*" *N.J.S.A.* 39:6A–8a (emphasis added); *Costa v. Perez,* 272 *N.J.Super.* 108, 113, 639 *A.2d* 372 (App.Div.1994).

Once the jury determines the extent of all the plaintiff's usual and customary activities before the injury, it must then decide whether the plaintiff has proved that the injury prevented the performance of "substantially all" of those activities for at least 90 of the 180 days immediately following the injury. "Substantially all" means the impact of the injury on those activities was "to a great extent" rather than just a "slight curtailment." *Duffy v. O'Connell,* 279 *N.J.Super.* 672, 681, 653 *A.2d* 1200 (App. Div.1995). By concentrating on the short period of time after the injuries were sustained, the focus of the jury is directed to all the plaintiff's usual and customary activities, including employment, marital, household, social, athletic or recreational endeavors. Clearly then, the serious impact on lifestyle from a temporary soft tissue injury involves more aspects of a plaintiff's lifestyle than may the serious impact from a permanent injury. Thus the plaintiff in *Dabal v. Sodora* was unable to engage in one "primary social activity," dancing, "which had been a significant and important component of [her] way of life." 260 *N.J.Super.* at 401–02, 616 *A.2d* 1297. On the other hand, the plaintiff in *Duffy v. O'Connell* was required to explain the effect of her injuries on

substantially all of her usual activities, not just a primary one, employment. In sum, to determine qualification for the verbal threshold of a type nine injury, a jury (or a judge considering a motion for summary judgment) need only consider the proofs of the plaintiff's disabilities during the first six months, albeit those proofs must concern substantially all of the plaintiff's usual activities, but it need not be concerned with the impact of the injuries on plaintiff's lifestyle thereafter.

### The Jury Instructions

Here, the judge instructed the jury that a plaintiff has to prove she sustained a "serious injury" before the jury could consider damages, and proof of injuries within any of three statutory categories permits her to cross the verbal threshold and have the jury consider defendant's alleged negligence and assess damages. Additionally, he told the jury the plaintiff had to prove the injuries resulting from the accident "had a serious impact upon her life." The judge defined the terms of a type seven injury and explained the need for objective medical proof, and finished by stating:

the limitation of use of a body organ or member in this category must be permanent; that is, it will continue for the rest of her life, and also she has to prove ... that the injury has had a serious impact upon her life. This means that the plaintiff must prove that the injury has seriously affected one or more activities which were a significant and important component of the plaintiff's way of life and ... has affected that ... on a permanent basis.

He then defined the types of injuries qualifying under the eighth statutory category and stated merely that the those injuries "must have had a serious impact upon her life."

As to the ninth category, the judge read the terms of the statute and added the following:

In this case now the defendant does not contest plaintiff's claim that there were more than 90 days immediately following the accident during which she did not work, and that you may well find should qualify her for a—having a serious impact on her life and—and that it did—that it did prevent her—the injury prevented her from carrying out her usual activities for more than 90 days.

*The issue here is whether the—she was unable—unable to work for that period of time due to injuries sustained in the accident,* the defendant maintaining her period of disability from work resulting from the accident was much more limited

than the 90–day period which she needs to prove to qualify her under the verbal threshold. Again, the injuries must be proved by objective credible medical evidence and must have had a serious impact upon her life. (emphasis added)

Then, after instructing the jury about negligence and damages, he described the verdict sheet the jury was to use. The first three questions related to the three types of verbal threshold injuries, and the judge told the jury that plaintiff had to qualify under at least one of the categories, resulting in a positive answer to one of the first three questions on the verdict sheet. If so, then the jury was asked to consider question four which asked whether the injuries had a serious impact on plaintiff's life. In that regard, he said:

Even if you have determined that she suffered an injury that falls within one—one of the three categories in the first three questions, unless you're satisfied by the evidence that the injury or injuries had a *serious impact* upon her life she still doesn't qualify under the verbal threshold, and your verdict is still—should be reported as in favor of the defendant. But if she has sustained at least one injury that qualifies under at least one of those categories and you find that it has had a *serious impact* upon her life, then you will proceed to the next questions. (emphasis added)

Plaintiff claims this added step asking the jury to find a "serious impact" was improper and unduly burdensome for her to meet the verbal threshold. When we review a set of jury instructions, we consider the overall effect of the charge and look at the language in context to see whether the jury was misled, confused or inadequately informed. *Latta v. Caulfield,* 79 *N.J.* 128, 135, 398 *A.*2d 91 (1979); *Navarro v. George Koch & Sons, Inc.,* 211 *N.J.Super.* 558, 570–71, 512 *A.*2d 507 (App.Div.), *certif. denied,* 107 *N.J.* 48, 526 *A.*2d 138 (1986). Therefore, looking at all of the instructions concerning the verbal threshold, we can only conclude that the jury was told that a serious impact on a plaintiff's lifestyle involved long term deleterious effects: "permanent" was the operative word. With a type nine injury, however, the serious impact need only last for ninety days, as long as it interfered with substantially all of plaintiff's usual and customary daily activities to a great extent. We do not believe this jury understood that distinction, as borne out by the response to the fourth interrogatory of "N/A See # 3."

Additionally, by directing the jury's attention to the times plaintiff was out of work, the judge failed to give equal attention to plaintiff's other usual and customary activities. She had testified that she was unable to go to the health spa, to help her husband in his small business, and to do laundry, cook or housework. While she failed to directly describe the extent of those activities (i.e., how customary and usual they were), she did say that helping her husband with his business usually involved eight hours a day after she finished her eight hour day at Pathmark.

By not directing the jury's consideration to the details of plaintiff's lifestyle, the judge left the impression that she could only cross the verbal threshold if there was a long lasting deleterious effect on her life. This was unjust because plaintiff had testified about a good number of daily activities covering most of each twenty-four hour day. The erroneous instructions, therefore, were clearly capable of producing the verdict for defendants, and must be reversed as plain error. *R.* 2:10–2.

### The Verdict for Economic Damages

█ Plaintiff contends the verdict was against the weight of the evidence because the award of economic damages for lost wages was inconsistent with the verdict determining that plaintiff did not qualify under the verbal threshold. After the jury had returned with its answers to the questions posed on the verdict sheet, the judge conferred with counsel and then asked the jury to consider whether plaintiff had proved her entitlement to "the claims of an economic nature." The trial judge described the issue well to the jury when he gave additional instructions and said:

[I]t is possible that you found that she was out of work due to the accident and suffered a loss of wages as a result for which she's entitled to compensation, but ... it's not serious enough to justify a claim for pain and suffering, the non-economic part. Or you may have, on the other hand, ... found in your deliberations that ... any time out from work for which she suffered a loss of wages was simply not as a result of any injury suffered in the accident here.

The jury was told that plaintiff was out of work from February 6, 1993 until January 2, 1994 and from September 9, 1994 until April

5, 1995, and asked to determine "the number of weeks ... within those dates ... [plaintiff] was out of work related (sic) as a result of this accident." After further deliberations, the jury found plaintiff was out of work for 44 weeks due to the accident, and the judge molded this verdict to $17,517.42 including pre-judgment interest. Nothing was awarded for the per quod claim asserted by the husband.

In contending that this verdict was inconsistent with the denial of relief under the verbal threshold for a type nine injury, plaintiff overemphasizes the significance of her lost work time. Simply put, her lost work time alone may not have interfered with "all of the material acts which constitute [her] usual and customary daily activities" to a "great extent" but was only a "slight curtailment." *Duffy v. O'Connell, supra,* 279 *N.J.Super.* at 681, 653 *A.2d* 1200. This is quite likely in view of the trial judge's negative assessment of plaintiff's credibility. When denying the motion for a new trial, he said:

I feel that from the testimony of the plaintiff herself, the jury was well within their province to find that her testimony was not credible. I personally found her testimony not to be credible in many areas, and in fact, sometimes bordered on the preposterous.

In *Bennett v. Hand,* 284 *N.J.Super.* 43, 44, 663 *A.2d* 130 (App.Div.1995), we relied on *N.J.S.A.* 39:6A–12 to conclude that "a plaintiff who is involved in an automobile accident and does not satisfy the verbal threshold requirements of *N.J.S.A.* 39:6A–8a may sue to recover unreimbursed income losses." We referred to *Shorter v. Leach,* 277 *N.J.Super.* 617, 622, 650 *A.2d* 16 (Law Div.1994), holding that a plaintiff, "even though failing to meet the verbal threshold, may still maintain a suit for economic losses, excluding, of course, any medical deductible and co-payment not paid under the PIP coverage of her insurance policy." Both cases were recently cited in *Loftus–Smith v. Henry,* 286 *N.J.Super.* 477, 488, 669 *A.2d* 852 (App.Div.1996), affirming this principle. Here, therefore, the jury's award of economic damages is not, per se, inconsistent with a denial of an award for non-economic damages based on claimed type nine injuries. We conclude that the verdict

for economic damages is valid even though the "no cause" verdict as to type nine non-economic damages is not.

Reversed and remanded for a new trial limited to consideration of non-economic damages for any type nine verbal threshold injuries.