■ MICHELLE MELINO, Respondent, v RHONDA L. LAUSTER et al., Appellants. [599 NYS2d 713] —Mercure, J. Appeal from an order of the Supreme Court (Cobb, J.), entered June 10, 1992 in Columbia County, which, *inter alia,* denied defendants' cross motion for summary judgment dismissing the complaint.

The only issue that need be addressed on this appeal is whether Supreme Court erred in denying defendants' cross motion for summary judgment dismissing the complaint upon the ground that plaintiff failed to sustain a serious injury as defined in Insurance Law § 5102 (d). We conclude that Su-

preme Court erred in denying the cross motion and should, indeed, have dismissed the complaint. We accordingly modify.

The competent evidence submitted on defendants' cross motion showed that plaintiff sustained the injuries forming the basis for this action on July 20, 1987, when the car that she was operating was struck in the rear by a van operated by defendant Rhonda L. Lauster. Plaintiff was wearing a seat belt and shoulder harness and there is no indication that the impact caused her to strike any part of the interior of her car. In the hours following the accident, plaintiff experienced no pain or other problems and sought no medical treatment. Upon arising the following day, however, plaintiff experienced stiffness, a headache and nausea. She went back to bed and "mainly stayed in bed for about two weeks" thereafter.

Plaintiff first saw her treating orthopedist, William Kite, on August 18, 1987 and was examined by him on seven subsequent occasions through January 31, 1989. Plaintiff's initial complaints were of headaches and pain in the lower back, neck and arm; by February 1992 only the lower back pain, sometimes radiating into her legs, persisted. Although the accident took place the month following plaintiff's high school graduation and prevented her from performing her summer job as a secretary for her family's construction business, she was able to go back to school in the fall of 1987 and pursue a full-time course of college study culminating in an Associate's degree in May 1989. At the time of plaintiff's October 1989 examination before trial, she had just commenced employment as a restaurant hostess.

On their motion, defendants submitted affidavits of examining neurologists Dominic Sette-Ducati and Mark Dentinger that refute the claim in plaintiff's bill of particulars that plaintiff sustained "permanent consequential limitation of a body function with herniation of disc at L4-5 and C7-T1" or, if plaintiff's injury or impairment is found to be nonpermanent in nature, that "plaintiff [was prevented] from performing substantially all the material acts which constituted [her] usual and customary daily activities for the period of July 20, 1987 to [January 23, 1989]". Significantly, Sette-Ducati and Dentinger opine that, at the time of their respective examinations of plaintiff on November 4, 1987 and December 29, 1989, there was "no evidence to suggest a cervical or lumbar disc" or of "structural neurologic disease involving the spinal cord, nerve roots or peripheral nerves nor * * * any indication of neurologic deficit or muscle spasm" to substantiate plaintiff's claims of pain. Clearly, this medical opinion, coupled with

plaintiff's bill of particulars and the transcript of her deposition testimony, satisfied defendants' initial burden of presenting evidence in admissible form establishing prima facie that plaintiff did not sustain a serious injury; the burden thereby shifted to plaintiff to come forward with evidence that she sustained a serious injury within one or more of the categories claimed in her bill of particulars (see, Lanuto v Constantine, 192 AD2d 989, 990).

In opposition to the motion, plaintiff presented her own affidavit as well as those of Kite and her attorney. The primary theme of plaintiff's affidavit is that she has experienced persistent lower back pain from the time of the accident. In his affidavit, Kite echoes this theme and sets forth some objective findings, including decreased leg-raising ability, hypalgesia, muscle weakness and decreased reflexes, to support it. Acknowledging that neither X rays nor a CAT scan substantiated his initial impression of a herniated disc, Kite ultimately opines that plaintiff suffered a "severe sprain/ strain of the cervical and lumbar region of her back".

Notably absent from plaintiff's submission, however, is any competent medical opinion that plaintiff suffered a meaningful impairment or limitation as the result of her pain. As noted, within two months of plaintiff's injury she was engaged in her anticipated college studies, carrying a full course load of 12 to 15 credit hours per semester and attaining an overall grade point average of 3.17. Although plaintiff states in conclusory fashion that she was unable to ski, skate or do aerobics, she acknowledges that she did not try these activities and there is no medical evidence confirming her inability to engage in them (see, Gaddy v Eyler, 79 NY2d 955, 957-958; Crane v Richard, 180 AD2d 706, 707). Similarly, Kite's office notes make frequent reference to an unspecified limitation in the range of motion of plaintiff's neck and back, but no effort is made to translate this constraint to plaintiff's daily activities (see, Lanuto v Constantine, supra, at 991; Hemmes v Twedt, 180 AD2d 925). Even the admonition in September 1987 that plaintiff avoid bending and lifting and indication that plaintiff "remain[ed] disabled for work" in January 1988 are meaningless in view of the fact that plaintiff was at the time a successful full-time college student.

Under the circumstances, we have no alternative but to reject Kite's opinion that plaintiff was disabled from performing her normal and customary daily activities for more than 90 of the 180 days immediately following the accident. Further, Kite's speculative opinion, rendered three years follow-

ing his last contact with plaintiff, that "*if* [plaintiff] still has similar symptoms, she *may* have sustained a permanent loss of use of a body function or system or significant consequential limitation thereof" (emphasis supplied) lacks probative value (*see, Leschen v Kollarits,* 144 AD2d 122, 123; *McLiverty v Urban,* 131 AD2d 449; *Kordana v Pomellito,* 121 AD2d 783, 784-785, *appeal dismissed* 68 NY2d 848; *cf., Lynch v Adirondack Tr. Lines,* 169 AD2d 904, 906).

As a final matter, we note our strenuous disagreement with the position of the dissenters that plaintiff has come forward with evidence raising a legitimate factual issue as to whether she suffered a significant limitation of use of a body function or system. First, this category of serious injury was not alleged in the complaint or bill of particulars or even in the affidavits in opposition to defendants' cross motion for summary judgment. Rather, the issue was improperly raised for the first time in this Court, with plaintiff's brief devoting four sentences to it. Second, the contention is grounded solely upon the fleeting references in Kite's affidavit, prepared three years following his last contact with plaintiff and, indeed, in response to defendants' cross motion for summary judgment, to limitation in the range of motion of plaintiff's cervical and lumbar spine during the time when plaintiff was engaged in a full-time course of college study. Clearly, the limitation reported by Kite was not sufficiently "significant" to prevent plaintiff from engaging in her primary activity during this period. Last, Kite has not offered a medical opinion that plaintiff suffered a significant limitation of use of any body function or system (*see, Gaddy v Eyler, supra; Hemmes v Twedt, supra*).

Crew III and Harvey, JJ., concur.

Yesawich Jr., J. (dissenting). Because we do not find plaintiff's claim—arguably advanced in William Kite's affidavit—that she suffered a significant limitation of use of her back to be "unsupported by any medical opinion", we respectfully dissent. Kite's affidavit, incorporating his office notes, clearly establishes that for a considerable period of time plaintiff's "back movements" or "lower back motions" were "quite limited", necessitating that she be directed to avoid bending and lifting entirely and to wear a back brace. As noted by the majority, these findings were not based solely on plaintiff's subjective complaints of pain but on objective symptoms such as hypalgesia, decreased reflexes and inability to lift her legs (*compare, Scheer v Koubek,* 70 NY2d 678, 679; *Cammarere v Villanova,* 166 AD2d 760, 761). Although it has been held that

some evidence of the extent of limitation is crucial to demonstrate a serious injury premised on the "significant limitation" category *(see, Licari v Elliott,* 57 NY2d 230, 239), there is no requirement that such evidence be in numerical form. Notably, the proof in *Licari v Elliott (supra)* established that the plaintiff suffered only a very mild limitation. Where, as here, there is competent medical testimony that the limitation is more than "minor, mild or slight" *(see, supra,* at 236), and that characterization is supported by objective clinical findings, summary judgment is not appropriate *(see, Lopez v Senatore,* 65 NY2d 1017, 1020). Nor must permanency be demonstrated if the evidence otherwise supports a finding of " 'significant limitation of use of a body function or system' " *(see, Bassett v Romano,* 126 AD2d 693, 694).

For these reasons, we believe that plaintiff's showing is sufficient to raise a question of fact with regard to the existence of a serious injury, and we would accordingly affirm Supreme Court's order.

Mikoll, J. P., concurs. Ordered that the order is modified, on the law, with costs to defendants, by reversing so much thereof as denied the cross motion; cross motion granted, summary judgment awarded to defendants and complaint dismissed; and, as so modified, affirmed.