■ KICHON DECKER et al., Respondents, v VICTOR A. STANG, JR., et al., Appellants. [663 NYS2d 448] —Carpinello, J. Appeal from an order of the Supreme Court (Connor, J.), entered July 29, 1996 in Columbia County, which denied defendants' motions for summary judgment dismissing the complaint.

As a result of two motor vehicle accidents occurring within a four-week period, plaintiff Kichon Decker (hereinafter plaintiff), and her husband derivatively, commenced this action against defendants alleging a multitude of permanent injuries, including injuries to plaintiff's neck, shoulder and spine. The first accident occurred on June 14, 1992 when the vehicle in which plaintiff was a passenger collided with the vehicle driven by defendant Victor A. Stang, Jr. Thereafter, on July 12, 1992, defendant was a front-seat passenger in an ambulance owned by defendant Richards Ambulance Service, Inc. and driven by de-

fendant Robert C. Ray when it hit a log while traveling down a highway, causing the vehicle to leave the road and jostle plaintiff around the vehicle. As amplified in her bill of particulars, plaintiff claims that she suffers from a permanent loss of use of her upper and lower extremities, spine and cerebral functions, a permanent consequential limitation of her upper and lower extremities and a significant limitation of use of her cerebral functions and spinal body system. She also claims to have sustained a medically determined injury or impairment of a nonpermanent nature which prevented her from substantially performing her usual daily activities for not less than 90 days during the 180 days following each accident. Following joinder of issue, Stang moved, and Ray and Richards cross-moved, for summary judgment dismissing the complaint upon the ground that plaintiff did not sustain a "serious injury" (Insurance Law § 5102 [d]) as a matter of law. Supreme Court denied the motions, prompting this appeal.

The affirmation of Robert Heineman, Jr., the board-certified orthopedic surgeon who performed an examination of plaintiff and reviewed her medical history and X rays, satisfied defendants' initial evidentiary burdens of presenting evidence in admissible form warranting a finding, as a matter of law, that plaintiff has not sustained a "serious injury" within Insurance Law § 5102 (d). Based upon his review of the medical records and his examination of plaintiff, Heineman concluded that plaintiff had preexisting degenerative arthritis of the cervical and lumbar spine before the accidents and that her present complaints, to the extent that they can be verified objectively,* are related to the ongoing natural process of degenerative arthritis. Indeed, Heineman found no muscle atrophy in plaintiff, a nearly full range of motion in her neck, normal reflexes and lumbar spine motion within normal limits. He concluded that plaintiff's present complaints were caused by neither the June 14, 1992 nor the July 12, 1992 accident, and that there is no evidence of any significant injury or permanency as a result of either accident.

Other medical proof in the record supporting defendants' motions includes medical records and impressions/diagnoses of plaintiff's various treating physicians following the accidents. Plaintiff was treated by Gerald Kufner, a neurologist. In December 1992, he noted that plaintiff continued to have

---

* Significantly, Heineman observed during his examination of plaintiff that she would profess an inability to move in certain ranges of motion when specifically asked to do so, but was able to so move at other points of the examination.

subjective complaints of "pain in the left rib cage, chronic pain continually without help with physical therapy of the lower back and leg". Kufner opined, however, that "some of her complaints might in part be psychological and this is difficult for me to evaluate due to a speech barrier". In February 1993, Kufner noted that plaintiff continued to complain of severe pain over her entire body and of numbness of her entire body, but stated that "[t]his is certainly not explained by a disc herniation flattening the cord at C5/C6 ever so slightly. I think there may well be a psychological component to those symptoms." He further stated that "[m]otor testing shows full strength in both upper and lower extremities". In March 1993, Kufner reported that, while plaintiff has a disc herniation, "this certainly does not explain the number of pains she has elsewhere and numbness of the face, head and so forth. I therefore believe that there is some psychological augmentation." He also reported that "[i]t was felt that there was some inconsistent reporting". In May 1993, Kufner's impression of plaintiff was "[c]ervical and lumbosacral sprain with findings on exam indicating a psychological component". In July 1993, he again reported that plaintiff had "a number of complaints which [he] could not correlate with any clinical findings or appropriate x-ray of [sic] testing".

In April 1993, Mark Dentinger, professor and vice-chairman of Albany Medical College's department of neurology, stated that plaintiff indicated tenderness with pressure over the cervical region but there was no spasm of trapezius muscles. He also noted that when plaintiff talked and moved, she had no apparent splinting of neck movements. He further noted that plaintiff "does have evidence from electrodiagnostic study of lower cervical radiculopathy and by magnetic resonance image of disc protrusion at C5-6 but on examination I did not find deficits related to those defined abnormalities". Dentinger was unsure of the onset of plaintiff's radiculopathy problems.

Valmore Pelletier, a neurologist, examined plaintiff to evaluate her complaints of diffused and generalized headaches, neck aches, arm pain and lower back pain. By letter dated December 27, 1993 to plaintiff's referring chiropractor, Pelletier stated that "[a]s best that I can determine, [plaintiff] never really had a serious impact although she was CAT scanned and eventually came under your care after a period of time". Pelletier acknowledged that an MRI scan of plaintiff's cervical spine indicated a herniated cervical disc at C5-C6 but stated "the issue at hand was whether or not this could be a substantial cause for her continued complaints". Upon a clinical examina-

tion of plaintiff, Pelletier noted that "[p]alpation of the spinous processes of the cervical spine yielded grimacing and wincing that was exaggerated and unbelievable". Based upon this examination, Pelletier concluded that plaintiff's symptoms "are functional in origin and bare no relationship to the small herniated cervical disc that she demonstrates on her cervical MRI" and that "there is an element of significant depression and hysteria that manifested itself during the examination". He recommended that plaintiff be examined by a competent psychiatrist and "[was] reasonably confident that there is no underlying neurologic malady here that requires neurosurgical treatment".

In our view, Heineman's conclusions, as well as the other evidence in the medical records submitted, establish that defendants presented prima facie evidence that plaintiff did not sustain a permanent loss of use, permanent consequential limitation or significant limitation of use of any body organ, member, function or system or a medically determined injury or impairment of nonpermanent nature which endured for 90 days of the first 180 days following either accident (*see*, *Tankersley v Szesnat*, 235 AD2d 1010).

The burden then shifted to plaintiffs to raise a triable issue of fact (*see*, *Gaddy v Eyler*, 79 NY2d 955, 957), which they failed to do. In order to successfully oppose the motion for summary judgment, it was incumbent upon plaintiffs to set forth "competent medical evidence based upon objective medical findings and diagnostic tests to support [her] claim[s] * * * [because] subjective complaints of pain * * * absent other proof [are] insufficient to establish a 'serious injury'" (*Eisen v Walter & Samuels*, 215 AD2d 149, 150). Here, neither plaintiff's affidavit nor the medical report of Robert Otten, the chiropractor who treated plaintiff for an eight-week period over one year after the accidents and on one occasion in March 1996, raised a triable issue of fact. Therefore, Supreme Court erred in denying defendants' motions for summary judgment.

The only competent medical proof submitted in opposition to the motions was a report of Otten, who opined that plaintiff suffers from cervical spine and lumbar spine "impairments". With respect to Otten's opinion that plaintiff suffers from a cervical spine impairment, he stated, without explanation, that her "injuries are causally related to the motor vehicle accident[s] of June 14, 1992 and July 12, 1992". With respect to her lumbar spine impairment, he opined, *inter alia*, "that there is reason to apportion 50% of her current signs and symptoms to an ongoing degenerative condition and structural imbal-

ance". He further opined, without any elaboration based on medical proof, that the June 14, 1992 accident "resulted in a flexion/extension whiplash injury with destabilization of the C5-C6 motor unit" and that the force with which she was thrown against the ambulance cab in the July 12, 1992 accident "would be the kind of force typical for a cervical disc herniation". In light of both accidents, Otten claims that plaintiff's "overall impairment" is "20%".

Initially, we note that the 20% over-all impairment that Otten claims to exist due to the injuries sustained in the two accidents is not "significant" or "consequential" (*see generally, Baker v Donahue*, 199 AD2d 661). Moreover, although Otten claims that plaintiff's injuries are "substantial, permanent and consequential", he fails to provide any nonconclusory details or medical support for these suppositions in relation to the accidents at issue. He also made no attempt to translate plaintiff's impairment to a constraint on her daily activities (*see, Melino v Lauster*, 195 AD2d 653, 655, *affd* 82 NY2d 828). Although there is evidence by way of plaintiff's affidavit that her activities were curtailed following the accidents and that she experiences subjective pain, we note that no supporting objective or credible medical evidence was presented to support these claims (*see, Podwirny v De Caprio*, 194 AD2d 1057; *Lanuto v Constantine*, 192 AD2d 989, *lv denied* 82 NY2d 654).

Plaintiffs failed to make a sufficient showing to raise an issue of fact as to plaintiff's claim of serious injury and therefore defendants' motions for summary judgment should have been granted.

Crew III, J. P., White, Yesawich Jr. and Spain, JJ., concur. Ordered that the order is reversed, on the law, with one bill of costs, motion and cross motion granted, summary judgment awarded to defendants and complaint dismissed.