■ BEVERLY A. SEYMOUR et al., Respondents, v JAMES L. ROE, Appellant. [755 NYS2d 452] —Spain, J. Appeal from an order of the Supreme Court (Dawson, J.), entered December 21, 2001 in Clinton County, which, inter alia, denied defendant's motion for summary judgment dismissing the complaint.

Plaintiffs commenced this action alleging that they sustained serious injuries in a July 8, 1998 automobile accident in which a car driven by defendant collided with the rear of a car driven by plaintiff Beverly A. Seymour in which her mother and sister, plaintiffs Sylvia N. Macey and Deborah L. Vaughan, were passengers. All three plaintiffs specified in their bills of particulars that they sustained both significant limitations of use of a body function or system and permanent consequential limitations of use of a body organ or member (*see* Insurance Law § 5102 [d]). Defendant moved for summary judgment as to all three plaintiffs without submitting an affidavit, affirmation or the testimony of a medical or other expert, instead relying on plaintiffs' deposition testimony, limited medical records of some of plaintiffs' treating physicians (or letters between treating physicians), diagnostic reports of radiological tests, physical therapy progress notes and other documentary evidence related to prior workers' compensation injuries. Plaintiffs opposed defendant's motion[1] by submitting letters written to defendant's counsel by the orthopedic surgeon who, at defendant's behest, conducted independent medical exams of all three plaintiffs, as well as affirmations and selective medical records of their treating physicians and other documents. Supreme Court denied defendant's motion, finding that he failed to meet his burden of demonstrating, prima facie, that plaintiffs did not suffer the serious injuries alleged. On defendant's appeal, we affirm.

Initially, as Supreme Court correctly recognized, a moving defendant may rely on unsworn reports of a plaintiff's treating physician and is not required to produce affidavits or affirmations of medical experts to make the requisite showing provided, of course, that the reports are sufficiently complete and, combined with the other proof, demonstrate that the plaintiff did not suffer a serious injury (*see Cody v Parker*, 263

1. While plaintiffs cross-moved for an order to depose four physicians (*see* CPLR 3212 [g]), there is no support in the record for their appellate claim that they also cross-moved for summary judgment on the issue of liability. Supreme Court denied the deposition request and plaintiffs neither cross-appealed nor raised any arguments in their briefs related to that cross motion, which is not before this Court.

AD2d 866, 867; *Tankersley v Szesnat*, 235 AD2d 1010, 1012 n 3; *Torres v Micheletti*, 208 AD2d 519; *Hochlerin v Tolins*, 186 AD2d 538; *Pagano v Kingsbury*, 182 AD2d 268, 270-271). Here, Macey's bill of particulars alleged that she sustained a permanent consequential limitation of use and a significant limitation of use of her cervical spine, consisting of a "C5-6 disc herniation which is accident related that results in considerable pain and limitation on turning and bending her head and neck." The evidence demonstrated that, after the accident, Macey was taken to the hospital, X rays were taken and she was released the same day; she thereafter received treatment from or was examined by various physicians. At the time of the accident, Macey was receiving workers' compensation benefits and had not worked since 1975, when she sustained a lower back injury (L4-5) at work for which she was later determined to be "permanently partially disabled to a marked degree" by the Workers' Compensation Board. In support of his motion related to Macey, defendant submitted a radiological report of Michael Phillips indicating that X rays taken of Macey's cervical spine the day of the accident showed no evidence of fracture, no dislocation or soft tissue swelling and concluded that she had "degenerative disk disease at C5-6."[2] An MRI taken almost four months later, on October 26, 1998, indicated a "[r]elatively large central and leftward HNP at C5-6 causing spinal stenosis [and] [b]ilateral foraminal encroachment at this level related to spurring."

In our view, the minimal proof offered by defendant in support of his motion for summary judgment failed to demonstrate, as a matter of law, that Macey did not sustain a serious injury as alleged or that her condition was solely congenital or attributable to her 1975 work-related injury (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853; *Torres v Micheletti*, *supra* at 519; *Hochlerin v Tolins*, *supra* at 538; *see also Correa v Salke*, 294 AD2d 461; *Taccetta v Scotto*, 287 AD2d 707, 709). Notably, the portions of Macey's medical records on which defendant relied were silent on key points, including the meaning or significance of the medical terms employed and the issue of whether Macey's condition was caused by this accident and, other than diagnostic reports, failed to include medical records, affidavits, affirmations or testimony from any of the several physicians who treated or examined her following the accident

2. Since Macey alleged in her bill of particulars only cervical spine injuries related to this accident and never moved to amend the bill of particulars, those portions of the proof discussing her lumbar sacral and thoracic spine are not considered.

(*cf. Toure v Avis Rent a Car Sys.*, 98 NY2d 345, 351-352; *Gaddy v Eyler*, 79 NY2d 955, 956-957; *Dabiere v Yager*, 297 AD2d 831, 831-832, *lv denied* 99 NY2d 503; *Itkin v Devlin*, 286 AD2d 477; *Hines v Capital Dist. Transp. Auth.*, 280 AD2d 768, 769; *Cruse v Berman*, 276 AD2d 580; *Anderson v Persell*, 272 AD2d 733, 734-735; *Decker v Stang*, 243 AD2d 1033, 1034-1035, *lv denied* 91 NY2d 812; *Panisse v Jrs. Truck Rental*, 239 AD2d 397; *Tankersley v Szesnat, supra* at 1012; *Melino v Lauster*, 195 AD2d 653, 654-655, *affd* 82 NY2d 828). Thus, defendant's motion pertaining to Macey was properly denied.

With regard to Vaughan, who was a passenger in the backseat of the car, she alleged in her bill of particulars that, as a result of this accident, she sustained both permanent consequential limitation of use, as well as significant limitation of use, both of her cervical spine and brain. She claimed resulting dizziness, headaches, memory loss, slowed speech, significant muscle spasms in her trapezius muscle, a "small to moderate" C5-6 disc herniation, and restrictions in or pain with neck movement. In support of his motion, defendant submitted medical records reflecting that the day *before* the accident, Vaughan was seen by her general practitioner, Glenn Schroyer, complaining of shoulder and neck pain and difficulty turning her neck reportedly due to moving furniture; X rays of her shoulder and neck were negative except to note some straightening of the cervical spine, and the diagnosis of shoulder and cervical strain was made. The day after the accident she worked at her factory job and did not seek any medical treatment for 10 days thereafter, when she returned to Schroyer complaining of neck pain. Schroyer noted significant muscle spasm to the trapezius (neck) muscle and "loss of the normal cervical lordosis (straightening) consistent with significant muscle spasm," and diagnosed "[w]hiplash injury with associated muscle spasm of the cervical spinous muscles" and "[r]ight otitis media/pharyngitis." The radiological report from that initial postaccident visit reflects "no fracture or subluxation," and an "[u]nremarkable cervical spine. No significant change since 7/7/98 [i.e., the day before the accident]."

Defendant also submitted a letter from Andres Roomet, reflecting his neurological evaluation of Vaughan on August 13, 1998 in which he recorded her complaints of worsening neck pain—which had improved with physical therapy—as well as headaches and shoulder pain. Roomet indicated that the CT and radiological films were normal, that upon examination she had "mild restriction of neck motility and left paravertebral muscle tenderness" and "shoulder tenderness" but "no

* * * focal deficits of any kind." Roomet concluded that Vaughan had "an improving cervical strain-post-concussion syndrome or post-traumatic syndrome with no deficit" and recommended continued physical therapy and that she remain out of work several more weeks. Medical records for a September 26, 1998 examination of Vaughan—apparently from Schroyer—reflect, with regard to her cervical spine, "full mobility. No pin point tenderness, although there's some pain in the right paraspinal region as well as the trapezius muscle. Full [range of motion]" and "[q]uestionable bulging disc C5 C6 per MRI."

Defendant's remaining proof included a letter dated over a year later from Roomet to Schroyer reflecting an October 4, 1999 examination in which Vaughan indicated that her headaches had improved, but she continued to complain of neck, right shoulder and arm pain. Roomet discerned "[n]o evidence of myelopathy," noted "right paracervical and trapezius tenderness, but no focal deficits" and, under "problem," listed "[d]iscogenic cervical pain." Vaughan thereafter had a cervical epidural block, and a letter from Roomet to Schroyer reflects that at her November 19, 1999 visit, she no longer had any shoulder pain or arm pain, had some neck pain but no neurologic deficit, and admitted not doing her physical therapy exercises. Regarding headaches, the letter indicated that she had been fine until a week earlier when she had "frequent headaches" which she treated with Tylenol and declined a prescription. Schroyer's medical records show Vaughan's December 15, 1999 office visit in which she reported improvements in her neck pain and some tenderness in the occipital area. Roomet's letter to Schroyer following a January 14, 2000 visit noted "some right occipital notch tenderness but no other findings," a negative repeat CT scan of her head and, under "assessment," listed "[p]ost-traumatic headache with component of occipital neuralgia." Defendant's only other proof in support of his motion was a February 2000 letter to Schroyer from the neurologist who treated her for cervical tenderness and headaches and concluded that she had "[c]ervicogenic and post-traumatic headache with [a] component of occipital neuralgia."

Upon review, we recognize that some of defendant's proof consisted of objective evidence (e.g., normal X rays and CT scans) and medical records which would support a finding that Vaughan did not sustain serious injuries in this accident as claimed, and that Vaughan's records largely reflect a preexisting shoulder and cervical strain, muscle spasms, tenderness, subjective complaints of pain, unquantified restrictions in

movement and the like, all of which are insufficient (*see Hines v Capital Dist. Transp. Auth.*, 280 AD2d 768, 769-770, *supra*; *Cody v Parker*, 263 AD2d 866 *supra*; *see also Phillips v Tissotvanpatot*, 280 AD2d 735). However, none of defendant's proof specifically addresses causation and some of the proffered medical records contain medical terms and assessments that may or may not support a finding of a serious injury.[3] In the absence of expert medical testimony, affidavits or affirmations to explain the specific medical terms and findings utilized in Vaughan's medical records (and their significance) on which defendant relies, this Court—like Supreme Court—is not in a position to conclude that defendant's proof demonstrates, as a matter of law, that Vaughan did not sustain a serious injury (*see Serrano v Canton*, 299 AD2d 703, 703-706). Thus, defendant's motion for summary judgment related to Vaughan was properly denied.

Turning to Seymour, the driver, she alleged in her bill of particulars that she sustained permanent consequential limitation of use and significant limitation of use of her low back or lumbar spine, involving the L3-4 disc with herniation causing pressure on the L3 nerve root.[4] She claimed that the injuries cause pain and restriction on bending, standing and carrying. She testified that 10 to 12 years earlier, she had sustained a back injury, which she described as involving her sciatic nerve and a dislocated disc, in an auto accident for which she received medical treatment, was out of work for one year and received a settlement.[5] Regarding this accident, she testified that upon impact her chest hit the steering wheel and her left shoulder hit the car door. She was taken to the hospital and given muscle relaxers, X rays were taken, and she was released the same night. Defendant offered the X-ray report from the day of the accident which indicated no evidence of fracture, the "[d]isc space heights [are] well maintained" and the "[a]llignment of

---

3. While Schroyer refers to a "[q]uestionable bulging disc C5 C6 per MRI," defendant did not offer the MRI report itself or any other proof related to it. In opposition, Vaughan submitted the MRI report reflecting "a small to moderate right paracentral C5-6 disc herniation * * * [which] causes borderline canal stenosis."

4. Seymour did not allege in her complaint or bill of particulars any claim under the 90/180 category of serious injury, and never moved to amend her bill of particulars and, accordingly, the reference to this category in her brief on appeal is unavailing.

5. No other evidence related to that prior accident was submitted.

the lumbar vertebral bodies is within normal limits."[6] However, the report of an MRI taken approximately 3½ weeks later noted a "far right lateral L3-4 disc herniation which slightly pushes the right L3 nerve root into fat. There is no compression of nerve roots demonstrated."[7] Seymour's testimony reflects that she never saw a neurologist or an orthopedic surgeon after this accident, she last saw her general practitioner in August 1998, and completed physical therapy in September 1998.

In relying upon this scant evidence, we find that defendant failed to satisfy his burden of establishing that Seymour did not, as alleged, sustain a serious injury to her lower back or lumbar spine as a result of this accident. A disc herniation may constitute a serious injury (*see Boehm v Estate of Mack*, 255 AD2d 749, 750; *see also Anderson v Persell*, 272 AD2d 733, 735, *supra*), albeit a mere diagnosis of a mild disc herniation by itself will not (*see Toure v Avis Rent A Car Sys.*, 98 NY2d 345, 353 n 4, *supra*). Among the shortcomings in defendant's proof is the failure to address the statutory terms "significant" and "consequential" which "relate * * * to medical significance and involve * * * a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part" (*Dufel v Green*, 84 NY2d 795, 798; *see Toure v Avis Rent A Car Sys.*, *supra* at 353). Defendant's limited proof fails to address whether Seymour's disc herniation is the source of her pain or limitations, the degree and permanency of her condition and whether her condition is connected to this accident, so as to satisfy defendant's burden of demonstrating that she did not sustain a serious injury (*see Dufel v Green*, *supra* at 798; *cf. Toure v Avis Rent A Car Sys.*, *supra* at 350-351; *Anderson v Persell*, *supra* at 734-735; *Delaney v Lewis*, *supra* at 897; *King v Johnston*, 211 AD2d 907).

Cardona, P.J., Mercure, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, with costs.

---

**6.** While the X-ray report noted calcifications compatible with cholelithiasis (i.e., gall stones), an undefined diagnosis upon which Supreme Court relied in denying defendant's motion, this is not alleged to be related to this accident.

**7.** Not considered were unsigned, unsworn progress notes apparently from a physical therapist dated August 14, 1998 (*see Pagano v Kingsbury*, 182 AD2d 268, 270, *supra*; *see also Delaney v Lewis*, 256 AD2d 895, 897).